**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CASUN INVEST, A.G., | )<br>) |
| Plaintiff, | )  Case No. 2:16-cv-02925-JCM-GWF |
| vs. | )<br>)  **ORDER** |
| MICHAEL PONDER, *et al.*, | )<br>)  **Re: Motion to Compel (ECF No. 32)** |
| Defendants. | )<br>) |

This matter is before the Court on Plaintiff's Motion to Compel (ECF No. 32), filed on July 6, 2017. Defendants filed their Opposition and Countermotion for Sanctions (ECF No. 35) on July 20, 2017. Plaintiff filed its Reply (ECF No. 38) on July 27, 2017. The Court conducted a hearing in this matter on August 14, 2017.

## BACKGROUND AND DISCUSSION

Plaintiff Casun Invest, A.G. ("Casun") alleges that it is an investment company that until April 17, 2013 owned a parcel of real property located in Woodside California ("Woodside Property"). *Complaint* (ECF No.1), ¶ 10. On March 14, 2002, Plaintiff granted Defendant Michael Ponder power of attorney to sell real property in the United States belonging to Casun. *Id.* at ¶¶ 11-12. In December 2002, Ponder was appointed as a director of Casun, but he was not appointed to Casun's Board of Directors. *Id.* at ¶ 13. On April 17, 2013, Ponder conveyed the Woodside Property to Defendant NVWS Properties, LLC ("NVWS") whose sole member is believed to be Defendant Lezlie Gunn. NVWS was formed as a Nevada limited liability company approximately three weeks prior to the conveyance. *Id.* at ¶¶ 8, 14-15. Prior to the sale, Gunn also formed Woodside Gate, LLC. Ponder serves as a manager of Woodside Gate, LLC. *Id.* at ¶¶ 21-22. The sales price for the property was $1,500,000. Ponder did

not inform Casun of the sale of the property and it did not receive the $1,500,000 sales proceeds. *Id.* at ¶¶ 16-18. Casun alleges that the Woodside Property had a fair market value in excess of $3,000,000 on the date of the sale to NVWS. *Id.* at ¶ 19. Casun alleges that it learned of the conveyance of the Woodside Property in September 2016 and thereupon sent Ponder a letter revoking his power of attorney and director position. *Id.* at ¶¶ 24-25.

Plaintiff alleges the following causes of action against Defendants: (1) Constructive Trust, Equitable Lien, Unjust Enrichment, and Aiding and Abetting Breach of Fiduciary Duty against NVWS and Gunn; (2) Breach of Fiduciary Duty and Constructive Trust against Ponder; (3) Civil Conspiracy to Defraud against Ponder, NVWS and Gunn; and (4) Alter Ego liability against Gunn. *Id.* at ¶¶ 26-78.

Plaintiff served discovery requests on Defendants Ponder, Gunn and NVWS. Plaintiff argues that Defendants asserted improper objections to the discovery requests or failed to provide sufficient responses.

**1.     <u>Interrogatories.</u>**

Plaintiff's Interrogatory Nos. 5, 6, 7, and 8 to Ponder ask him to identify any gifts he gave to or received from Defendant Gunn and Ronald Richard Simpson from January 1, 2012 through September 26, 2016.[1] *Motion* (ECF No. 32), pgs 7-8. Interrogatory Nos. 8, 9, 10 and 11 to Gunn ask her to identify any gifts she gave to or received from Ponder and Simpson from January 1, 2012 through September 26, 2016. *Id.* at pgs 9-11. Defendants objected to these interrogatories on the grounds that the word "gifts" is vague, ambiguous, overbroad and unduly burdensome. *Id.* Interrogatory No. 9 to Ponder and Interrogatory No. 2 to Gunn ask them "to identify all bank accounts (by institution and account number) utilized by You since March 2013." *Id.* at pgs 8-9. Defendants objected to these interrogatories on the grounds that the phrase "utilized by You" is vague and ambiguous. *Id.* Interrogatory No. 6 to NVWS asked it to identify any individuals who have resided at the Woodside Property since April 17, 2013. NVWS objected to this interrogatory on the ground that word "resided" is vague and ambiguous. *Id.* at pgs 10-11.

---

[1] The Court has not been given information about Mr. Simpson's involvement in the subject transactions or events.

2

The subject words and phrase may have some degree of vagueness that could justify an objection on that ground. There would be more merit in Defendants' objections, however, if they had answered the interrogatories subject to the objection. The word "gift," in the context used in the interrogatories, means "something that is voluntarily transferred by one person to another without compensation." Webster's Third New International Dictionary (2002). The only uncertainty here is the scope of "gifts" to be included in the interrogatory answers. It arguably could include a gift as modest as paying another's cab fare or buying lunch. The Court will therefore limit the Defendants' answers to "gifts" of $100.00 or greater. The word "reside" or "resided," in the context used in the interrogatories, means "to dwell permanently or continuously; have a settled abode for a time; have one's residence or domicile." *Id.* With respect to the subject property, the Court requires Defendants to identify all persons who stayed overnight at the subject property for a period of two weeks or more. This will ensure that persons who used the property as a residence, even if only temporarily, are identified. With respect to bank accounts "utilized by You," the Court construes this to mean bank accounts on which the Defendant was the account holder or a signatory with the power to withdraw funds from the account. Defendants are directed to answer the foregoing interrogatories in accordance with these instructions.

**2. Requests for Production of Documents**.

Defendants responded to several of Plaintiff's requests for production of documents by stating: "After investigation, [Defendant] is unaware of any documents in [his, her or its] control or possession responsive to this Request." *See* Defendant Ponder's responses to Requests Nos. 2, 3, 4, 7, 8, 11, 12, 13, 16, 18, and 20; Defendant Gunn's responses to Requests Nos. 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 15, 17, and 19; and Defendant NVWS's responses to Requests Nos. 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 18. The Court agrees with Plaintiff that these responses are vague, evasive and insufficient.

Fed.R.Civ.P. 34(a)(1) authorizes a party to obtain production of relevant documents "in the responding party's possession, custody or control." A party responding to a request for production under Rule 34 has an affirmative duty to seek the information reasonably available to it from its employees, agents or others subject to its control. *Envtech, Inc. v. Suchard*, 2013 WL 4899085, at *2 (D.Nev. Sept. 11, 2013) (citing *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D.Cal. 2006)). "Where a party does not have responsive documents, it must come forward with an explanation of the

search conducted 'with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence.'" *Id.* (quoting *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D.Cal. 2012)). In *Meeks v. Parsons*, 2009 WL 3003718, at *4 (E.D.Cal. Sept. 18, 2009), the court stated that when a response to a Rule 34 request "is minimal and clearly omits information from readily identifiable repositories likely to include some or all of the requested materials or information, the obvious conclusion is that the responding party has neither conducted a reasonable inquiry nor produced all documents in its possession, custody or control. . . . Indeed, an earmark of a recipient's inadequate inquiry is the obvious absence of documents or other written materials that the recipient would be expected to have retained in the ordinary course of business." (citation omitted). Although Rule 34 does not require the responding party to sign the responses under oath, the court may require the responding party to provide a sworn response or declaration setting forth the efforts it made to locate and produce responsive documents in it possession, custody or control. *Id.* at *5; *see also Farber*, 234 F.R.D. at 189; *Envtech*, 2013 WL 4899085 at *5; and *Lizarraga v. Buffalo Wild Wings, Inc.*, 2016 WL 1465338, at *4 (D.Nev. April 14, 2016).

      Defendants' responses to the foregoing requests omit the word "custody." This may be no more than a drafting oversight. More concerning, is the lack of any information in the responses showing that Defendants have, in fact, conducted a diligent search for responsive documents and produced all documents in their possession, custody or control. For example, Plaintiff seeks documents relating to communications between the Defendants. Individuals typically communicate by electronic means such as email or text messaging. It is reasonable to believe that Defendants communicated with each other and with third persons about the sale and transfer of the Woodside Property, and that electronic records of their emails, text messages, or memoranda of their communications still exist. (Paper documents regarding these matters may also have been created.) Plaintiff also seeks documents relating to the transfer of money between the parties as to which there would likely be records if such transfers occurred. The complaint alleges that Defendant Gunn is the sole member of NVWS which she formed in March 2013. *Complaint* (ECF No. 1), ¶¶ 12, 15.1. In her answer to the complaint, Gunn denies on information and belief that she is the sole member of NVWS, but admits that she formed that company. *Answer* (ECF No. 12) ¶¶ 12, 15. Plaintiff requests that Gunn produce all documents she executed to

4

form NVWS. Gunn states, however, that she is "unaware of any documents in her control or possession responsive to this Request." This response appears of doubtful validity because a person is generally likely to retain, at least for a reasonable period of time, documents relating to her formation of a legal entity. These examples are not intended be inclusive of all responses that are inadequate.

It may be that no communications or transactions occurred regarding a particular matter, and therefore no documents exist. It may be that a communication or transaction occurred, but there was no contemporaneous recording or subsequent memorialization of the communication or transaction. Finally, it may be that records regarding the communications or transaction were created, but have since been lost or destroyed. The Defendants are ordered to supplement their responses to the foregoing requests as follows: (1) if no communications or transactions occurred, Defendant's should so state; (2) if communications or transactions occurred, but were not recorded or memorialized, Defendants should so state; and (3) if records regarding the communications or transactions were created, but have since been lost or destroyed, then Defendants should explain the circumstances and describe the efforts it made to locate and produce responsive records. Because Defendants' previous responses are uninformative and evasive, the Court further orders Defendants to sign their supplemental responses to requests for production under oath.

### 3. **Requests for Bank Statements and Documents Evidencing Transfers of Money.**

Plaintiff's Request No. 15 to Defendant Ponder requests a copy of his personal bank statements (checking and savings) from March 28, 2013 to the present that reflect payment or receipt of payment from any of the following: (a) Casun; (b) NVWS; (c) Woodside Gate, LLC; (d) Gunn; or (e) Simpson. Request Nos. 17 and 19 to Defendant Ponder request all documents evidencing the transfer of money (by check, wire transfer or otherwise) from Ponder to Gunn or Gunn to Ponder, or from Ponder to Simpson or Simpson to Ponder, from January 1, 2012 to the present.

Request No. 14 to Defendant Gunn requests a copy of her personal bank statements (checking and savings) from March 28, 2013 to the present that reflect payment or receipt of payment from any of the following: (a) Casun; (b) NVWS; (c) Woodside Gate, LLC; (d) Ponder; or (e) Simpson. Request Nos. 16 and 18 to Defendant Gunn request all documents evidencing the transfer of money (by check, wire transfer or otherwise) from Gunn to Ponder or Ponder to Gun, or from Gunn to Simpson or

Simpson to Gunn, from January 1, 2012 to the present.

Request No. 2 to NVWS requests all of NVWS's bank statements, including checking, savings, and/or operating accounts from March of 2013 to the present. Request Nos. 14, 15, 16 and 17 requests all documents evidencing the transfer of money (by check, wire transfer or otherwise) from NVWS to Gunn or from Gunn to NVWS, from NVWS to Ponder or from Ponder to NVWS; from NVWS to Woodside Gate, LLC or from Woodside Gate, LLC to NVWS; from NVWS to Simpson, or from Simpson to NVWS from January 1, 2012 to the present.

Defendants objected to these requests on the grounds that they are overly broad, unduly burdensome and seek to harass the Defendants. They further objected on the grounds that the requests seek personal, private and protected information, and that the requests are disproportionate to needs of the case. A party's personal financial information, including bank records, are discoverable if they are relevant to the claims or defenses in the case. In *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372 (W.D.N.Y. 2006), the plaintiff alleged that the defendants engaged in a fraudulent scheme whereby the county assessor imposed inflated tax assessments on the plaintiff's property in order to induce the plaintiff to hire appraisers to work to reduce the assessments. The appraisers then kicked back a portion of their fees to the assessor and two insiders in the plaintiff's company. The plaintiff served subpoenas on banks and other financial institutions to obtain personal account information of the defendant appraiser and his wife. In denying the defendant's motion for a protective order against the subpoenas, the court held that a party's privacy interest in his personal financial affairs does not outweigh the opposing party's right to discover such information when it is clearly relevant to the claims and defenses at issue. *Id.* at 376–77; *see also State Farm Mut. Auto. Ins. Co. v. Duval Imaging, LLC*, 2008 WL 11341312, at *6 (S.D. Fla. Jan. 31. 2008) (plaintiff entitled to obtain defendant's bank records in a case involving alleged fraud and unjust enrichment in submitting improper and fraudulent insurance claims).

In this case, Plaintiff alleges that Defendants engaged in a fraudulent scheme to sell Plaintiff's real property for an amount substantially less than its fair market value and then failed to remit the sales proceeds to Plaintiff. Plaintiff's discovery requests are limited in scope. They seek personal bank records from Ponder and Gunn that reflect payment or receipt of payment from Casun, NVWS, Woodside Gate, LLC, Ponder/Gunn or Simpson. They also seek documents evidencing the transfer of

money between Gunn and Ponder, and between Ponder and Simpson, or Gunn and Simpson. The time frame of the requests is also limited to the period from January 1, 2012 to the present. Plaintiff's requests for Defendant NVWS's bank records and records of transfers of money between it and the other Defendants, and Woodside Gate, LLC and Simpson are also relevant. NVWS was allegedly created shortly before the conveyance of the Woodside Property and its bank records are reasonably likely to contain relevant information to the alleged fraudulent scheme. Plaintiff's requests are relevant to the claims and defenses in this case, and they are reasonably limited in scope. Defendants' objections to these requests are therefore overruled and they are ordered to produce all documents in their possession, custody or control responsive to the requests.

**4. NVWS's Tax Returns**

Plaintiff's Request No. 3 to NVWS requests its tax returns for 2013-2016. Courts accord greater privacy protection to federal income tax returns than other forms of financial information because the tax system depends on accurate reporting of income and deductions by taxpayers who might be less candid on their returns if they were made available to opposing parties in the ordinary course of litigation. *Fosbre v. Las Vegas Sands Corp.*, 2016 WL 54202, at *5 (D.Nev. Jan. 5, 2016) (citing *Sweeney v. The UNLV Research Foundation*, 2010 WL 1756875, at *4 (D.Nev. Apr. 30, 2010); *Robinson v. Duncan*, 255 F.R.D. 300, 303 (D.D.C. 2009)). Assuming that Defendants produce documents and information in response to Plaintiff's other discovery requests, production of NVWS's federal tax returns should be unnecessary. Plaintiff may renew its motion to compel if it is unable to obtain relevant information through other means.

**5. Requests for Production of Mobile Devices, Computers, and Related Documentation.**

Plaintiff requests that Defendants produce "any and all mobile device(s) including, but not limited to cellular telephones, smart phones, table (sic) devices o (sic) a forensic image of all available devices, used by You from January 1, 2012 through September 26, 2016." *See* Request No. 23 to Ponder; Request No. 22 to Gunn; and Request No. 19 to NVWS.

Plaintiff also requests "all documents identifying all computer equipment, including desktop computers, laptop computers, tablet devices, cellular telephones capable of sending and receiving email,

7

1  text or other messages and any other portable or non-portable electronic device capable of sending,
2  receiving or transmitting electronic dates (sic) used by You from January 1, 2012 through September 26,
3  2016." *See* Request No. 24 to Ponder; Request No. 23 to Gunn; and Request No. 20 to NVWS.

4  Plaintiff also requests the production of "all computer equipment, including desktop computers,
5  laptop computers, table (sic) devices, removable or portable data storage device(s) including, but not
6  limited to, USB hard drives, "thumb" drives, flash storage devices, memory cards (Compact Flash, SD
7  format, etc.), or a forensic image of all available devices, used by You from January 1, 2012 through
8  September 26, 2016. *See* Request No. 25 to Ponder; Request No. 24 to Gunn; and Request No. 21 to
9  NVWS

10  Plaintiff also requests "access to all cloud or network based storage account(s), including but not
11  limited to, Dropbox, Google Drive, icloud and Box or other accounts used to store date (sic) remotely
12  and used by You from January 1, 2012 through September 26, 2016. *See* Request No. 26 to Ponder;
13  Request No, 25 to Gunn; and Request No. 22 to NVWS.

14  Defendants objected to these requests on the grounds that they are overly broad, unduly
15  burdensome and seek to harass the Defendants.

16  "Generally, a discovery request without any temporal or other reasonable limitation is
17  objectionable on its face as overly broad." *Sanchez Ritchie v. Sempra Energy*, 2015 WL 12914435, at
18  *2 (S.D.Cal. March 30, 2015) (citing *Ehrlich v. Union Pacific R.R. Co.*, 302 F.R.D. 620, 625 (D.Kan.
19  2014); *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 541- 542 (D.Kan. 2006)). Here,
20  Plaintiff seeks to require Defendants to produce all of their electronic storage devices or forensic images
21  thereof, so that Plaintiff, its counsel or their agents can presumably search the devices for potentially
22  relevant information. Such electronic devices, if they exist, likely contain substantial irrelevant and
23  personal information that Plaintiff is clearly not entitled to discover. The devices may also contain
24  privileged information such as confidential attorney-client communications. Requiring a party to
25  produce its electronic storage devises for inspection is generally proper only when the party has refused
26  or failed to produce nonprivileged relevant information that is likely within its possession, custody and
27  control, and has failed to show that it has made a diligent, good faith search for such information. If
28  such a showing was made, the Court would appoint an independent, special master to search the devices

pursuant an appropriate search protocol directed at identifying nonprivileged, relevant information. The Court would not order Defendants' electronic storage devices to be simply turned over to Plaintiff for an unsupervised search. This case has not reached the point where an order for the production of Defendants' electronic devices is warranted. Accordingly, these requests for production are denied.

The Court will also not order Defendants to identify all of their electronic storage devices at this time. However, in responding Plaintiff's requests for production of documents, Defendants shall identify the electronic storage devices/accounts or physical files they searched in order to obtain and produce nonprivileged documents responsive to Plaintiff's requests.

**6. Requests for Admissions.**

Request for Admission No. 16 to Ponder and Request for Admission No. 14 to Gunn ask them to admit "that in April of 2013, the fair market value of the Woodside Property was in excess of One Million, Five Hundred Thousand Dollars in U.S. currency ($1,500,000)." Request for Admission No. 6 to NVWS asks it to admit that "One Million, Five Hundred Thousand Dollars in U.S. currency ($1,500,000) was less than the fair market value of the Woodside Property in April of 2013." Defendants answered these requests by stating that they are "without sufficient information and knowledge to form a belief as to the truth and accuracy of the allegations contained therein, and therefore den[y] same."

Rule 36(a)(4) states:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Defendants did not object to the requests for admission and, in particular, did not object that "fair market value" or the phrase "the fair market value . . .in excess of" are vague. If Defendants had done so, they would have a reasonable basis for requiring Plaintiff to further define these terms or phrases. In their opposition, however, Defendants argue that "fair market value" is vague. Fair market value is commonly defined as the price that a willing buyer would pay to a willing seller, neither being under

compulsion to buy or sell, taking into consideration all the uses to which the property is adapted and might in reason be applied. *Jefferson Ins. Co. v. Superior Court*, 475 P.2d 880, 882 (Cal. 1970); *Unruh v. Streight*, 96 Nev. 684, 615 P.2d 247, 249 (Nev. 1980). There are various recognized methods for determining fair market value under this definition, including the comparable sales method, which the court will not further detail here.

Defendants' answers to the requests for admissions violate two requirements of Rule 36(a)(4). First, the rule states that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Defendants merely state that they are "without sufficient information and knowledge to form a belief as to the truth and accuracy of the allegations contained therein." They provide no explanation for this answer. If the sale of the property for $1,500,000 was a legitimate, arms length transaction, Mr. Ponder and Ms. Gunn likely had some information or belief as to the fair market value of the property at the time of sale. Without an explanation as why they cannot admit or deny the requests for admissions, one is left with the impression that Defendants are simply evading their duty to clearly admit or deny the requests.

The answering party must also state "that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981). The Defendants' answers provide no such statement or certification. "This requirement is not merely a semantic exercise; the answering party must actually make a 'reasonable inquiry' prior to asserting lack of knowledge." *Norris v. First Fed. Savings and Loan*, 2012 WL 1565602, at *2 (N.D. Ohio 2011). The rule, however, does not require the answering party to provide a detailed description of the inquiry made. *Stark-Romero v. National R.R. Passenger*

. . .

. . .

. . .

. . .

. . .

. . .

. . .

*(Amtrak)*, 275 F.R.D. 551, 556 (D.N.M. 2011). Because Defendants' answers to the requests for admission do not comply with Rule 36(a)(4), the Court orders them to provide supplemental answers in compliance with the rule. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (ECF No. 32) is **granted**, in part, and **denied**, in part, in accordance with the foregoing provisions of this order

**IT IS FURTHER ORDERED** that Defendants shall serve supplemental discovery responses in compliance with this order on or before September 20, 2017.

**IT IS FURTHER ORDERED** that Defendants' Countermotion for Sanctions (ECF No. 35) is **denied**.

DATED this 6th day of September, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge