UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CASUN INVEST, A.G.,, <br><br> Plaintiff(s), <br><br> v. <br><br> MICHAEL H. PONDER, et al., <br><br> Defendant(s). | Case No. 2:16-CV-2925 JCM (GWF) <br><br> ORDER |

Presently before the court is third-party defendant Hans-Peter Wild's motion to dismiss third-party plaintiff Lezlie Gunn's third-party complaint. (ECF No. 20). Gunn filed a response (ECF No. 25), to which Wild replied (ECF No. 28).

Also before the court is Gunn's first motion for leave to file supplemental evidence in support of her opposition to Wild's motion to dismiss. (ECF No. 57). Wild filed a response (ECF No. 61), to which Gunn replied (ECF No. 62).

Also before the court is Gunn's second motion for leave to file supplemental evidence in support of her opposition to Wild's motion to dismiss. (ECF No. 64). Wild filed a response (ECF No. 65), to which Gunn replied (ECF No. 66).

**I.  Background**

The underlying action in this case relates to a purported sale of real property. (ECF No. 1). The instant motions query whether a Nevada court can exercise personal jurisdiction over a third-party defendant when he executes an indemnification agreement with a Nevada resident who is later sued in Nevada.

On April 22, 2015, Gunn and Wild entered into an indemnification agreement. (ECF No. 12). The indemnification agreement provides that Wild will indemnify and hold Gun harmless

**James C. Mahan**
**U.S. District Judge**

from certain claims, actions, suits, and/or legal proceedings.[1] (ECF No. 20-1). The agreement contains a choice-of-law provision indicating that it "shall be enforced in accordance with the laws of the State of Nevada . . . ." *Id.*

Wild is a current resident of Switzerland and is the majority shareholder of Casun Invest, A.G. (ECF Nos. 12, 20-2, 25).

On December 16, 2016, plaintiff Casun Invest, A.G. filed its complaint against Gunn, Michael Ponder, and NVWS Properties LLC. (ECF No. 1). On February 7, 2017, Gunn filed her response and third-party complaint. (ECF No. 12). Gunn's third-party complaint asserts a single cause of action: express indemnification against Wild. (ECF No. 12).

On April 6, 2017, third-party defendant Wild filed a motion to dismiss the third-party complaint for lack of personal jurisdiction and *forum non conveniens*. (ECF No. 20).

## II. Legal Standard

### a. Personal jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a prima facie case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Where a state has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the due process clause, as Nevada does, a court need only address federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

---

[1] Wild asserts that the agreement is subject to "numerous contract defenses." (ECF No. 20 at 3). As Wild concedes, those defenses are "not pertinent to this motion." *Id.*

An assertion of personal jurisdiction must comport with due process. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Two categories of personal jurisdiction exist: (1) general jurisdiction; and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction arises where a defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414–16). "[T]he plaintiff must demonstrate the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted). In other words, defendant's affiliations with the forum state must be so "continuous and systematic" as to render it essentially "at home" in that forum. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–61 (2014).

Specific jurisdiction arises where sufficient contacts with the forum state exist such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (citations omitted).

### b. Forum non conveniens

"The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 (1981). "A *forum non conveniens* determination is committed to the sound discretion of the district court." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 1143 (9th Cir. 2001) (quoting *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir.1998)). *Forum non conveniens* is "an exceptional tool to be employed sparingly." *Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1224 (9th Cir.2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).

### III. Discussion

In Wild's motion to dismiss Gunn's third-party complaint, Wild argues that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(2) because the court lacks personal jurisdiction over the third-party complaint. (ECF No. 20). Wild argues in the alternative that the court should dismiss Gunn's claim under the doctrine of *forum non conveniens*. *Id.*

#### a. Personal jurisdiction

##### i. General jurisdiction

As an initial matter, no general jurisdiction exists over Wild in Nevada. As Wild is a citizen of Switzerland, he is not "at home" in Nevada.[2] *See Daimler*, 134 S. Ct. at 760–61 (describing the general jurisdiction analysis for individuals).

Gunn argues that Wild is "at home" in Nevada because of his semi-frequent travels, membership to a golf club, and business dealings through, amongst other companies, Wild Affiliated Holdings, Inc. ("WAH"), which is incorporated in Nevada. (ECF No. 25 at 14–15). However, Wild's visits and membership to a golf club are neither systematic nor continuous enough to establish him as "at home" in Nevada. *See Tuazon*, 433 F.3d at 1171 (requiring systematic and continuous ties with the forum for general personal jurisdiction to exist).

---

[2] As defendant notes, most of the evidence Gunn offers to support her theory of general jurisdiction is absent from the third-party complaint. (ECF No. 20). However, as the court explains below, assuming Gunn did properly allege in the complaint the facts she uses to support her arguments regarding general jurisdiction, Gunn nonetheless would not demonstrate that general jurisdiction exists over Wild in Nevada.

Further, the fact that WAH is incorporated in Nevada is similarly insignificant. Gunn argues that because WAH was incorporated in Nevada and because Wild "routinely conducted business for [WAH] in Las Vegas," that general jurisdiction exists. (ECF No. 25 at 14). Wild conducting business in Nevada on behalf of WAH does not establish him as "at home." *See Daimler*, 134 S. Ct. at 761.

Gunn also contends that Wild should be considered an automatic resident of the United States for taxation purposes based on the amount of time Wild spent in the United States in years prior to 2014. (ECF No. 25 at 15). This has no bearing on whether Wild should be subject to general jurisdiction in Nevada. *See Daimer*, 134 S. Ct. at 761.

Finally, Gunn contends that Wild maintained a Nevada-based cell phone for twelve years as well as bank accounts in Nevada for his Nevada companies. (ECF No. 25 at 15). Even when aggregated together with all of Gunn's other allegations, these alleged facts do not demonstrate that Wild is essentially *at home* in Nevada. Therefore, the court cannot exercise general jurisdiction over Wild in Nevada. *See Daimler*, 134 S. Ct. at 761.

  *ii. Specific jurisdiction*

Accordingly, to withstand dismissal under rule 12(b)(2), Gunn must demonstrate that her allegations establish a prima facie case for specific jurisdiction. *See Boschetto*, 539 F.3d at 1015. In other words, Gunn must satisfy the first two prongs of the test for specific jurisdiction. *See Schwarzenegger*, 374 F.3d at 802.

   *A. Purposeful availment*

The Ninth Circuit treats purposeful availment and purposeful direction as separate methods of analysis. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Purposeful availment is for suits sounding in contract, whereas purposeful direction is for suits sounding in tort. *Schwarzenegger*, 374. F.3d at 802 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

To meet the first two prongs of the purposeful availment analysis for specific jurisdiction, a plaintiff must show that defendant purposefully availed himself of the privilege of conducting activities within the forum state that give rise to plaintiff's claims. *Schwarzenegger*, 374 F.3d at

802. To determine this, the court will look at: "actions by the defendant *himself* that create a 'substantial connection' with the forum state," "affirmative conduct which allows or promotes the transaction of business within the forum state," and "prior negotiations and contemplated future consequences, terms of the contract and the parties' actual course of dealing." *Picot v. Weston,* 780 F.3d 1206, 1212 (9th Cir. 2015).

In *Walden v. Fiore*, the Supreme Court underscored the importance of a defendant's own, direct contacts with the forum state in the specific-jurisdiction analysis. 134 S. Ct. 1115, 1126 (2014). The Supreme Court held that a Nevada district court could not exercise specific jurisdiction over a Georgia police officer who, while working as a deputized DEA agent at a Georgia airport, searched a Nevada-bound couple and seized almost $97,000 in cash representing legitimate gambling proceeds. *Id.* at 1119. The officer then drafted in Georgia what was alleged to be a false and fraudulent probable cause affidavit to support a potential forfeiture action for the seized funds. *Id.* at 1124.

The Supreme Court held that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 1126. The Court held that defendant's actions in Georgia "did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 1125. The Court continued, "[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of [the officer's] challenged conduct had anything to do with Nevada itself." *Id.*

In sum, *Walden* clarified that "minimum contacts analysis cannot impermissibly [let] plaintiff's contacts with the defendant and forum . . . drive the jurisdictional analysis." *Id.* at 1125 (internal quotations omitted).

The Ninth Circuit addressed personal jurisdiction post-*Walden* in *Picot v. Weston*, reiterating that "personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *Id.* at 1214. In *Picot*, plaintiff brought claims for declaratory judgment and tortious interference with a contract. *Id.* at 1210. The court held that a California court could not exercise specific jurisdiction over either

- 6 -

claim. *Id.* at 1213, 1215. In considering plaintiff's claim for tortious interference with a contract, the court noted,

> [Defendant's] allegedly tortious conduct consists of making statements to Coats (an Ohio resident) that caused HMR (a Delaware corporation with offices in Ohio) to cease making payments into two trusts (in Wyoming and Australia). [Defendant] did all this from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California.

*Id.* at 1215.

Gunn argues in her briefing that specific personal jurisdiction is appropriate for various reasons: (1) Wild incorporated multiple companies (including WAH) in Nevada; (2) Wild entered into the indemnification agreement with Gunn, a Nevada resident; (3) the indemnification agreement is incorporated into a Release and Settlement Agreement ("RSA")[3] that allegedly involved compensation related to services Gunn provided to WAH and Wild's other Nevada-based companies; (4) Wild would conduct company business in Nevada, "thereby invoking the benefits and protections of the laws of Nevada;" and (5) Wild's *alter ego*, Casun Invest, A.G., brought suit against Gunn and triggered Wild's duties under the indemnification agreement. (ECF No. 25). Wild responds that Gunn's allegations do not meet the Ninth Circuit's exacting requirements for the exercise of personal jurisdiction in Nevada over a claim related to the indemnification agreement. (ECF No. 28).

Here, Wild's conduct purposefully availed himself of the privilege of conducting activities within the forum state. Wild entered into an agreement with a Nevada resident to indemnify and hold her harmless from certain claims brought against her. The indemnification agreement reads, in part:

> In the event or situation that any person, entity, or governmental agency of any jurisdiction or country, threatens, attempts or proceeds, indirectly or directly, with any claim(s), action(s), suits(s) and/or legal proceeding(s) against Lezlie J. Gunn,

---

[3] The indemnification agreement and the RSA are referenced in the complaint, and Wild attached the RSA and indemnification agreement to his motion to dismiss. (ECF No. 12) (third party complaint); (ECF No. 20-1) (exhibit to Wild's motion to dismiss that contains the RSA). As the agreements are referenced in the complaint, are central to plaintiff's claims, and Wild offering the document as an exhibit demonstrates that he does not dispute its authenticity, the court will consider the agreements. *See Ramanathan v. Saxon Mortg. Services, Inc.*, no. 2:10-cv-02061-KJD-LRL, 2011 WL 3542415 (D. Nev. June 24, 2011) (holding that a court may take judicial notice of documents not attached to the complaint when they are incorporated by reference, central to plaintiff's claims, and their authenticity is not disputed).

James C. Mahan
U.S. District Judge

- 7 -

> at any time and for any reason whatsoever, for, or in relation to, anything, whether it is tangible, intangible and/or real property, that Lezlie J. Gunn received and/or will receive from Dr. Hans-Peter Wild and/or his estate, during his life or through his estate, Dr Hans-Peter Wild hereby agrees that he, his estate, and/or any foundation(s) or entities Dr. Hans-Peter Wild has or will create, shall defend, indemnify, forever release, and hold Lezlie J. Gunn completely harmless from any such claim(s), action(s), suit(s), liabilities, damages, and/or legal proceeding(s) brought on against [sic] Lezlie J. Gunn.

(ECF No. 20-1). This agreement contemplates indemnifying Gunn for claims brought against her in, amongst other places, Nevada by agreeing to indemnify and hold Gunn harmless from any qualifying legal proceeding brought against her in any jurisdiction. Therefore, the indemnification agreement demonstrates that Wild purposefully availed himself of the privilege of conducting activities within the forum state.

Further, the choice-of-law provision in the indemnification agreement provides additional evidence that Wild purposefully availed himself of Nevada's protections and laws by entering into the agreement with Gunn. *See Rudzewicz*, 471 U.S. at 481–82 (holding that a choice-of-law provision, when standing alone, would be insufficient to support jurisdiction, but that any such provision should not be ignored in the jurisdictional analysis).

Gunn's claim relates to Wild's forum-related contacts. The indemnification claim arises out of and relates to Wild's agreement to indemnify Gunn, a Nevada resident, for claims brought against Gunn in Nevada.

Wild argues that plaintiff's forum connections cannot drive the jurisdictional analysis. Wild cites to the holding in *Picot*, which states "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." (ECF No. 20 at 8) (citing 780 F.2d at 1213). Wild's discussion accurately states the law, but his argument overlooks the factual differences between this case and *Picot*.

Here, unlike in *Picot*, the indemnification agreement envisions Wild as discharging his own obligations in the forum state, as he agreed to indemnify and hold Gunn harmless in any jurisdiction where a covered claim is brought. *Cf. Picot*, 780 F.3d at 1215 (holding that the contract did not anticipate defendant discharging his contractual duties in the forum state). The fact that

1  Gunn could be sued in Nevada, her home state, and Wild would have to indemnify her in Nevada was a highly foreseeable occurrence.[4]

As Gunn has met her burden of establishing the first two prongs of the test for specific jurisdiction, the burden shifts to Wild to demonstrate that the exercise of jurisdiction in this case would not be reasonable. *See Schwarzenegger*, 374 F.3d at 802.

*B. Reasonableness*

To determine if the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," the court considers the following seven factors:

(1) the extent of the [defendant's] purposeful injection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum;
(3) the extent of conflict with the sovereignty of the defendant's state;
(4) the forum state's interest in adjudicating the dispute;
(5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7) the existence of an alternative forum.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). "No one factor is dispositive; a court must balance all seven." *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987)). However, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi,* 480 U.S. at 114.

---

[4] Although foreseeability is not the touchstone of jurisdictional analysis, it is a relevant consideration when analyzing specific personal jurisdiction. *See Asahi Metal Indus. Co., Ltd. V. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987) ("The Court [in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)] disclaimed, however, the idea that 'foreseeability is wholly irrelevant' to personal jurisdiction, concluding that '[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'") (citing 444 U.S. at 297).

States have a "manifest interest in providing effective means of redress for [their] residents." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Further, "[a] choice of law provision may reinforce a defendant's 'deliberate affiliation with the forum State and the foreseeability of possible litigation there.'" *Parasoft Corp. v. Parasoft S.A.*, no. cv 14-9166-DMG (PLAx), 2015 WL 12645754, at *3 (C.D. Cal. Feb. 9, 2015) (quoting *Elec. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1353 (Fed. Cir. 2003)).

"[The most efficient judicial resolution] factor focuses on the location of the evidence and witnesses." *Panavision*, 141 F.3d at 1323 (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). "It is no longer weighed heavily given the modern advances in communication and transportation." *Id.*

Here, the first two reasonableness factors suggest that exercising jurisdiction over Wild would be reasonable. Wild has an ongoing relationship with Nevada through his indemnification agreement with plaintiff. Further, Wild owns a large portion, if not all, of Casun Invest, A.G., the plaintiff that brought the underlying lawsuit. Wild's actions constitute purposeful injection into the forum state's affairs, and demonstrate that Wild would not suffer a significant burden from defending the action in the forum. *See Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'").

The fourth and sixth factors also suggest that exercising jurisdiction over Wild in this case would be reasonable. Nevada has an interest in adjudicating a dispute over an indemnification agreement entered into between one of its citizens and a foreign person whereby the foreign person agrees to indemnify the forum citizen. This is particularly applicable here, as the indemnification agreement "shall be enforced in accordance with the laws of the State of Nevada." (ECF No. 20-1); *see Parasoft Corp.*, 2015 WL 1265754.

The fifth factor, regarding the efficiency of judicial resolution, is either neutral or slightly favors Wild. Wild states that the evidence and witnesses that he will use to provide contract

- 10 -

defenses are located in Europe. (ECF No. 20). Neither party discusses the location of evidence or witnesses plaintiff will use to establish her claims. Further, the court notes that this factor is accorded less weight due to modern advances in communication and transportation. *See Panavision*, 141 F.3d at 1323.

The seventh factor favors Wild. Wild cites the existence of an alternative forum, Switzerland, to adjudicate this dispute. (ECF No. 20). However, even if the court assumes that Switzerland is an adequate alternative forum, this factor does not provide much support for the argument that the exercise of jurisdiction over Wild in Nevada would be unreasonable in this instance.

Neither party meaningfully discusses the third factor, the extent of conflict with the sovereignty of defendant's state. As the court sees no potential conflict, the court holds this factor is neutral or favors Gunn.

In balancing the factors, although some weigh in Wild's favor, the court holds that Wild "failed to present a compelling case that the . . . exercise of jurisdiction in [Nevada] would be unreasonable." *See Panavision*, 141 F.3d at 1324.

### *C. Summary*

In sum, the court holds that Gunn has made a *prima facie* showing that Wild's conduct created forum-related contacts that give rise to the instant dispute. Wild has not demonstrated that the exercise of jurisdiction in this case would be unreasonable. Accordingly, the court will deny Wild's motion to dismiss for lack of personal jurisdiction.[5] *See Panavision*, 141 F.3d at 1323.

### *iii.  Forum non conveniens*

Wild argues that even if the court holds that personal jurisdiction exists in this case, the court should dismiss the third-party complaint pursuant to the doctrine of *forum non conveniens*. (ECF No. 20). Wild asserts that, pursuant to the Tenth Circuit decision in *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1176 (10th Cir. 2009), Switzerland constitutes an adequate alternative forum.

---

[5] As the court holds that defendant Wild's own affirmative conduct subjects him to personal jurisdiction in Nevada, the court will not address Gunn's *alter ego* theory of jurisdiction.

James C. Mahan
U.S. District Judge

- 11 -

(ECF No. 20). Gunn responds that the public and private factors do not favor dismissal in this case. (ECF No. 25).

"To prevail on a motion to dismiss based upon *forum non conveniens,* a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015), cert. denied, 136 S. Ct. 915 (2016) (quoting *Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1224 (9th Cir.2011)).

An "alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano* 643 F.3d at 1225. "Ordinarily, a plaintiff's choice of forum will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

To determine private interest, the court considers the following seven factors:

(1) the residence of the parties and the witnesses;
(2) the forum's convenience to the litigants;
(3) access to physical evidence and other sources of proof;
(4) whether unwilling witnesses can be compelled to testify;
(5) the cost of bringing witnesses to trial;
(6) the enforceability of the judgment; and
(7) "all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Lueck*, 236 F.3d at 1145.

To determine public interest, the court considers the following five factors:

(1) local interest of lawsuit;
(2) the court's familiarity with governing law;
(3) burden on local courts and juries;
(4) congestion in the court; and
(5) the costs of resolving a dispute unrelated to this forum.

*Id.* at 1147.

If both the private and public factors, establish "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," then a trial court is justified in declining jurisdiction. *Carijano*, 643 F.3d at 1234. In *Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983), the Ninth Circuit noted that "the standard to be applied [to a motion for dismissal on the ground of *forum non conveniens*] is whether . . . defendants have made a clear showing of facts which . .

- 12 -

. establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." (internal quotation marks and citation omitted). *Id.* at 1410. *Forum non conveniens* is "an exceptional tool to be employed sparingly, [not a] . . . doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

Here, Gunn's choice of forum will not be disturbed. Wild's motion does not make a strong showing that Gunn's attempt to litigate her indemnification claim against Wild in Nevada is oppressive or vexatious, *see Cheng*, 708 F.2d at 1410, and the private interest and public interest factors do not strongly favor trial in a foreign country, *see Lueck*, 236 F.3d at 1145.

Wild's motion does not demonstrate that the private interests strongly favor trial in Switzerland. Gunn resides in the state of Nevada, (ECF No. 12), and her choice of forum is entitled to deference, *see Lueck*, 236 F.3d at 1145. Wild resides in Switzerland. (ECF No. 20). However, he signed an indemnification agreement with Gunn, a Nevada resident. (ECF No. 20-1). Further, Casun Invest, A.G., a company over which plaintiff alleges Wild retains 98% ownership, is suing Gunn in Nevada, and the lawsuit forms the foundation for the indemnification claim against Wild. Wild's attorneys are the same attorneys that represent Casun Invest, A.G. Defendant has not shown that Nevada is an inconvenient forum.

In addition, Wild's motion does not demonstrate that any witnesses he intends to call would be unwilling to testify in a Nevada court or that the cost of gathering witness testimony via deposition or otherwise would be prohibitive.

While defendant makes lengthy arguments regarding the cost to defendant of litigating the indemnification claim in Nevada, he does not acknowledge the cost to plaintiff of separately litigating her indemnification claim in Switzerland. As the indemnification claim arises directly out of the instant lawsuit, brought against plaintiff in her home state, the practicalities and efficiencies of plaintiff litigating the claims in one action, instead of in two separate countries, are apparent. These practicalities do not favor a separate action in Switzerland.

Based on the foregoing, the court holds that the private factors do not favor dismissal. *See Dole*, 303 F.3d at 1019 (holding that when the record was unclear about whether defendant could

subpoena unwilling witnesses, the relative number of foreign witnesses was unclear from the record, and the coordination of extra-territorial litigation was suspect, the private factors did not favor dismissal).

The public factors favor trial in Nevada. As the court noted above, Nevada has a strong interest in enforcing the contractual rights of its citizens, which supports retaining jurisdiction. *See Dole*, 303 F.3d at 1019. Further, a Nevada court is familiar with Nevada law on indemnification contracts. Wild does not provide a meaningful argument that this litigation places an undue burden on the court or would add unnecessary congestion. *See* (ECF No. 20 at 13) (devoting two conclusory sentences to the factors). Finally, the dispute is related to the forum, which makes the fifth public interest factor inapplicable to this case.

This case does not involve "such oppression and vexation" that requires this court to employ the "exceptional tool" of *forum non conveniens*. *See Ravelo Monegro*, 211 F.3d at 514; *Cheng*, 708 F.2d at 1410. As Wild does not demonstrate that the public and private interest factors strongly favor trial in a foreign country, the court will not dismiss the case based on *forum non conveniens*. *See Lueck*, 236 F.3d at 1145.

   a. *Motions for leave to supplement*

Gunn filed two motions for leave to file supplemental evidence in response to defendant's motion to dismiss. Gunn hopes to offer evidence of (1) a declaration provided by Wild's attorney; (2) emails from Wild's attorney to defendant Ponder; (3) a letter relating to a charter flight in 2011; (4) an email correspondence relating to Indag Pouch Systems; (5) an email correspondence regarding contacting a tax consultant at Ernst & Young in Las Vegas. (ECF Nos. 57, 64). Gunn argues that "[t]he additional information is extremely relevant in substantially aiding this Court in its decision regarding personal jurisdiction over Wild." (ECF No. 57 at 2); *see also* (ECF No. 64 at 2) (". . . more evidence to support this Court exercising personal jurisdiction over [Wild].").

The court will deny Gunn's motions. As Wild notes in his responses, none of this evidence weighs on the court's jurisdictional analysis, as it neither tends to establish that Wild is "at home"

in Nevada nor tends to demonstrate sufficient minimum contacts to support specific jurisdiction over the indemnification claim.[6]

## IV. Conclusion

Gunn establishes that Wild purposefully availed himself of the privilege of conducting activities in Nevada, and Gunn's indemnification claim arises out of Wild's Nevada contacts. Wild has not demonstrated that the exercise of jurisdiction would be unreasonable. Further, Wild has not shown that the extraordinary remedy of dismissal based on the doctrine of *forum non conveniens* is proper in this case.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Wild's motion to dismiss Gunn's third-party complaint (ECF No. 20) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Gunn's first motion to supplement (ECF No. 57) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Gunn's second motion to supplement (ECF No. 64) be, and the same hereby is, DENIED.

DATED February 16, 2018.

*/s/ James C. Mahan*
UNITED STATES DISTRICT JUDGE

---

[6] As the court is denying plaintiff's motion on the grounds that the evidence is irrelevant, it will not consider defendant's alternative argument that the court should deny the motion because the proffered evidence is not newly discovered evidence.