UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CASUN INVEST, A.G.,

                Plaintiff(s),

v.

MICHAEL H. PONDER, et al.,

                Defendant(s).

Case No. 2:16-CV-2925 JCM (GWF)

ORDER

Presently before the court is defendants Michael H. Ponder ("Ponder"), NVWS Properties, LLC's ("NVWS") and defendant/third-party plaintiff Lezlie Gunn's ("Gunn") motion for partial summary judgment. (ECF No. 199). Plaintiff Casun Invest, A.G. ("Casun") and third-party defendant Dr. Hans-Peter Wild ("Wild") filed a response (ECF No. 207), to which Ponder, NVWS, and Gunn (collectively "defendants") replied (ECF No. 212).

Also before the court is Casun's motion for partial summary judgment against Ponder for breach of fiduciary duty. (ECF No. 198). Ponder filed a response (ECF No. 209), to which Casun replied (ECF No. 216).

Also before the court is Wild's motion for summary judgment. (ECF No. 197). Gunn filed a response (ECF No. 208), to which Wild replied (ECF No. 215).

**I.    Background**

The instant action arises from a dispute regarding the transfer of real property located at 140 Josselyn Lane, Woodside, California 94602 ("Woodside property"). (ECF No. 1). Casun, a Swiss corporation, alleges that it owned the Woodside property until Ponder—Casun's former director—and Gunn—who was both romantically and professionally involved with Wild—conspired to unlawfully transfer the property to NVWS in exchange for $1.5 million. *Id.* Casun

**James C. Mahan**
**U.S. District Judge**

further alleges that it has not received any portion of the sale proceeds. *Id.* Gunn admits that she created NVWS as a Nevada limited liability company approximately three weeks prior to the Woodside conveyance, but denies that she conspired with Ponder to take the Woodside property from Casun without paying compensation. (ECF No. 12).

On December 16, 2016, Casun filed the underlying complaint, asserting nine causes of action: (1) constructive trust against NVWS and Gunn; (2) equitable lien against NVWS and Gunn; (3) unjust enrichment against NVWS and Gunn; (4) breach of fiduciary duty against Ponder; (5) aiding and abetting breach of fiduciary duty against NVWS and Gunn; (6) constructive fraud against Ponder; (7) civil conspiracy against Ponder, NVWS, and Gunn; (8) alter ego liability against Gunn; (9) attorney's fees and costs against Ponder, NVWS, and Gunn. (ECF No. 1).

On February 7, 2017, Gunn filed a third-party complaint against Wild, who owns 98% of the stock in Casun. (ECF Nos. 12, 135). Gunn asserts a single third-party claim for express indemnity pursuant to a contract that allegedly requires Wild to indemnify Gunn against any and all claims. (ECF No. 12). The indemnity provision provides as follows:

> In the event or situation that any person, entity, or governmental agency of any jurisdiction or country, threatens, attempts or proceeds, indirectly or directly, with any claim(s), action(s), suit(s) and/or legal proceeding(s) against Lezlie J. Gunn, at any time and for any reason whatsoever, for, or in relation to, anything whether it is tangible, intangible and/or real property, that Lezlie J. Gunn received and/or will receive from Dr. Hans-Peter Wild and/or his estate, during his life or through his estate, Dr. Hans-Peter Wild hereby agrees that he, his estate, and/or any foundation(s) or entities Dr. Hans-Peter Wild has or will create, shall defend, indemnify, forever release, and hold Lezlie J. Gunn completely harmless from any such claim(s), action(s), suit(s), liabilities, damages, and/or legal proceeding(s) brought on against Lezlie J. Gunn.
>
> Furthermore, if a portion of this Indemnification Agreement is deemed invalid by any jurisdiction, the remaining portions of this Indemnification Agreement shall be upheld as if the invalid portion was not included in the Indemnification Agreement. The Indemnification Agreement is irrevocable.
>
> This Indemnification Agreement shall be enforced in accordance with the laws of the State of Nevada, in the United States of America.

(ECF No. 197 at 4–5) (emphasis removed).

Gunn and Wild both move for summary judgment in their favor regarding the indemnification claim. (ECF Nos. 197; 199). The defendants move for summary judgment as to Casun's first, fourth, fifth, seventh, eighth, and ninth causes of action. (ECF No. 199). Casun moves for summary judgment on its breach of fiduciary duty claim. (ECF No. 209).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

| | |
|---|---|
| 1 | consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159– |
| 2 | 60 (1970). |

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.     Discussion**[1]

*A. Casun's alter ego claim*

Here, Nevada law governs this court's alter-ego analysis. *See Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993) (citing *Wolfe v. United States,* 806 F.2d 1410, 1411 n.3 (9th Cir.1986), *cert. denied,* 482 U.S. 927 (1987)) ("[The court] appl[ies] the law of the forum state in determining whether a corporation is an alter ego of the taxpayer."). Under Nevada law,

---

[1] Although both Casun and Wild request oral argument for their respective motions, the court considers and decides both motions without oral argument for the reasons set forth herein. *See* LR 78-1 ("All motions may be considered and decided with or without a hearing.")

"the 'essence' of the alter ego doctrine is to 'do justice' whenever it appears that the protections provided by the corporate form are being abused." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845–46 (Nev. 2000) (citing *Polaris Industrial Corp. v. Kaplan*, 747 P.2d 884, 888 (Nev. 1987)). The court considers three "general requirements" when deciding whether to apply the alter ego doctrine:

> (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice.

*Polaris Indus. Corp.*, 747 P.2d at 886 (citing *McCleary Cattle Co. v. Sewell,* 317 P.2d 957, 959 (Nev. 1957)); *see also* Nev. Rev. Stat. § 78.747.

The parties concede that the first requirement is met: Gunn was and is the sole manager of NVWS. (ECF No. 199 at 12). Thus, the court need only consider whether there is a unity of interest and ownership between Gun and NVWS and whether adhering to the corporate fiction would sanction fraud or promote injustice.

Gunn argues that "bank records indicate that NVWS operates as its own entity solely with respect to the Woodside [p]roperty transfer, which was between Casun (through its agent Mr. Ponder) and NVWS." *Id.* Gunn further argues that "[t]here is no commingling of personal and company funds, there is no undercapitalization, there is no use of the corporation as a mere conduit for an individual's business, and there is no disregard of formalities or failure to maintain arms-length transactions with the corporation." *Id.* at 15. Thus, Gunn avers that the second requirement is not met.

Casun responds by contending that "Gunn and Ponder cannot insulate themselves from liability for their fraudulent conduct by citing the separateness of one of the three entities [d]efendants created to carry out their fraudulent scheme." (ECF No. 207 at 16). By Casun's estimation, Gunn's alleged fraudulent conduct—"pocket[ing] the $2,100,000 Dr. Wild wired Gunn to pay Casun the $2,050,000 purchase price for the Woodside property"—necessarily means that

there is a unity of interest and ownership. *Id.* Finally, Casun contends that the court should pierce the corporate veil because Gunn formed NVWS solely to take title to the Woodside property. *Id.*

But Casun does not explain why failing to pierce the corporate veil would sanction fraud. Indeed, Casun brings a variety of claims against Ponder, Gunn, and NVWS that would, if proven, hold them accountable and compensate Casun for defendants' fraudulent conduct. (*See* ECF No. 1). Other than the argument that Gunn converted ("pocketed") Dr. Wild's $2,100,000 rather than pay Casun, there is no evidence or other allegations of Gunn's purported commingling corporate and personal funds.

Instead, the evidence shows that NVWS was formed to take title to and manage the Woodside property. This does not warrant piercing the corporate veil. "The corporate cloak is not lightly thrown aside," and the evidence in this case does not warrant doing so. *N. Arlington Med. Bldg., Inc. v. Sanchez Const. Co.*, 471 P.2d 240, 243 (Nev. 1970).

Accordingly, the court grants defendants' motion for partial summary judgment as to Casun's alter ego claim.

B. *Third-party complaint for express indemnity*

Generally, indemnity agreements are enforceable legal contracts and can provide grounds to raise a claim for express indemnity. *See Transamerica Premier Ins. Co. v. Terry W. Nelson*, 878 P.2d 314 (Nev. 1994); *American Federal Sav. Bank v. County of Washoe*, 802 P.2d 1270, 1273 (Nev. 1990). Unlike most contracts, indemnification agreements are "strictly construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal language." *George L. Brown Ins. v. Star Ins. Co.*, 237 P.3d 92, 97 (Nev. 2010).

The court denied Wild's motion for judgment on the pleadings because the facts, as pleaded, did not render the indemnity agreement inapplicable to this action on its face. (ECF No. 162 at 4–5). The parties have had time to develop the facts of this case through discovery and develop their own arguments in light thereof.

James C. Mahan
U.S. District Judge

- 6 -

It is undisputed that Ponder, acting in his capacity as a direktor[2] of Casun, transferred the Woodside property to NVWS. (*See generally* ECF Nos. 197; 198; 199; 207; 208; 209; 212; 215; 216). As discussed above, Gunn argues that she is not the alter ego of NVWS. Further, the court granted defendants' motion to dismiss as to the alter ego claim, finding that the alter ego doctrine should not apply in this case. Thus, Gunn concedes—and the court accepts—that she never received title to the Woodside property.[3]

As this court noted in its prior order, the indemnification agreement in this case contains a provision the significantly limits Wild's obligation to indemnify Gunn. (ECF No. 162 at 4). Because indemnity agreements are "strictly construed," Wild's indemnity obligations are limited to those which are "for, or in relation to, anything whether it is tangible, intangible and/or real property, that Lezlie J. Gunn received and/or will receive from Dr. Hans-Peter Wild and/or his estate, during his life or through his estate." (ECF No. 197 at 4–5); s*ee George*, 237 P.3d at 97.

Accordingly, because Gunn never took title to the Woodside property and because the indemnification agreement applies only to claims that arise from property that Gunn received from Wild or Wild's estate, the indemnification agreement is inapplicable. The court denies Gunn's motion and grants Wild's motion as to the third-party complaint for indemnity.

*C. Breach of fiduciary duty, aiding and abetting, civil conspiracy, and constructive trust*

Under Nevada law, "[a] breach of fiduciary duty claim requires [p]laintiffs to show [1] the existence of a fiduciary duty, [2] the breach of that duty, and [3] that the breach proximately caused the damages." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008) (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007) (applying Nevada law); *Clark v. Lubritz,* 944 P.2d 861, 866–67 (Nev. 1997)).

---

[2] As Casun points out in its motion for partial summary judgment, "[i]n Switzerland, the term 'direktor' is used to describe someone selected and authorized by the board of directors to act on behalf of the corporation." (ECF No. 198 at 2 n.1). Casun represents that this position is the Swiss equivalent of a United States corporate officer. *Id.*

[3] "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing *Rissetto v. Plumbers & Steamers Local 343*, 94 F.3d 597, 600–601 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Gunn cannot simultaneously argue that she is not the alter ego of NVWS *and* that she received title to the Woodside property.

Civil conspiracy is a Nevada state law claim that "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol.-Generator Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998).

Here, Casun argues that Ponder and Gunn conspired to defraud Casun by transferring title to the Woodside property without providing consideration. Both parties agree that Ponder owed Casun a duty of loyalty and a duty of care under Swiss law. (ECF Nos. 198; 199). However, Ponder argues that he did not breach his fiduciary duty to Casun. (ECF No. 199 at 16). Instead, Ponder contends that he followed Wild's instructions to sell the Woodside property and that he was reinstated as a direktor of Casun to do just that. *Id.*

But Casun argues that Ponder had a duty to provide the grant deed to the board of directors either before or, at the very least, after its execution. (ECF No. 198 at 7). Casun further argues that Ponder had a duty to confirm or secure payment of the purchase price. *Id.* Ponder disputes that his fiduciary duty to Casun required him to present the grant deed or confirm/secure payment of the purchase price and that he was not instructed to do so. (*See generally* ECF No. 209).

There are genuine issues of material fact regarding whether Ponder had a duty to present the grant deed or secure payment of the purchase price such that both motions are denied. On one hand, Casun presents evidence that Ponder "assured [the sole member of Casun's board of directors] that he would have all the documents prepared and email them to [the board]." (ECF No. 216 at 6). Thus, Ponder may have had a duty to present the grant deed to the board of directors, consistent with his representation.

Similarly, Ponder may have had an obligation to collect the purchase price on behalf of Casun. Ponder argues that Gunn provided "the equivalent of $1,500,000 to Wild . . . for the purchase of the Woodside [p]roperty." (ECF No. 209 at 4). Wild may have received that consideration, but Casun was entitled to the purchase price. Thus, Ponder may have had a duty to ensure Casun received the purchase price. The court does not have sufficient facts to conclusively establish whether Wild received the purchase price on behalf of Casun—indeed, whether Wild received the $1,500,000 equivalent is in dispute.

Accordingly, the court denies both motions as to the breach of fiduciary duty claim.

Defendants argue that the court must necessarily dismiss Casun's aiding and abetting and constructive trust claims because the breach of fiduciary duty claim fails. (ECF No. 199 at 17). However, the court denied defendants' motion as to the breach of fiduciary duty claim, so this argument is unavailing. Defendants further argue that "there is no evidence that Ms. Gunn conspired with or aided and abetted Ponder in any kind of plan for any kind of common unlawful objective" because "she had no role in creating the [g]rant [d]eed for the Woodside [p]roperty . . . ." *Id.* at 14.

But Casun presented enough circumstantial evidence of Gunn's involvement in the alleged fraudulent scheme to survive a motion for summary judgment on this claim. Casun presents evidence that Ponder forwarded each and every email regarding the Woodside property and his reinstatement as a direktor to Gunn. (ECF No. 207 at 9, 14). Gunn indisputably organized the entities that took title to the Woodside property, although Gunn contends that this was at Wild's direction. (*See generally* ECF Nos. 199; 207).

Further, Casun presents evidence—the deposition testimony of Neil Kalin, the Rule 30(b)(6) designee for the California Association of Realtors—that the purchase agreement used a form that the California Association of Realtors allegedly released on April 29, 2013. (ECF No. 207 at 6). But Gunn and Ponder both testified that they executed the purchase agreement on or about April 12, 2013. *Id.* Thus, Casun argues that:

> Barring use of a time machine, there is no way Gunn and Ponder executed the [p]urchase [a]greement or the [r]eceipt on the dates indicated in the documents or as claimed during their depositions. The fabrication of the [p]urchase [a]greement and the [r]eceipt serve only to show how far [d]efendants are willing to go to try to cover-up their fraudulent conduct.

*Id.* Ponder and Gunn respond that Mr. Kalin did not know the exact release date of the form, and that a draft version of the purchase agreement form was made available to association members prior to the official release date. (ECF No. 212 at 6). Thus, there is a genuine issue of material fact regarding the aiding and abetting and the civil conspiracy claim.

James C. Mahan
U.S. District Judge

- 9 -

1    Accordingly, the court denies both Casun's and defendants' motions as they pertain to the breach of fiduciary duty claim. The court further denies defendants' motion as to the aiding and abetting and constructive trust claims.

*D. Attorneys' fees and costs*

The Nevada Supreme Court has unambiguously held that attorneys' fees can be awarded as damages "in those cases in which a party incurred the fees in recovering real or personal property acquired through the wrongful conduct of the defendant or in clarifying or removing a cloud upon the title to property." *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 35 P.3d 964, 970 (Nev. 2001) (footnote citation omitted). However, "[b]ecause parties always know lawsuits are possible when disputes arise, the mere fact that a party was forced to file or defend a lawsuit is insufficient to support an award of attorney fees as damages." *Id.*

Defendants' argument regarding Casun's ninth claim for attorneys' fees and costs as special damages is premised on "neither Ms. Gunn, Mr. Ponder, nor NVWS [being] liable for any tortious conduct or breaches of contract." (ECF No. 212 at 15). Defendants contend that because "[t]here are simply no facts warranting a finding of tortious conduct against either Ms. Gunn, Mr. Ponder, or NVWS . . . there can be no facts adequately supporting the claim for attorneys' fees as special damages." *Id.* But defendants concede that special damages—like attorneys' fees—can be awarded if they are incorporated within other causes of action. (ECF No. 199 at 17).

In light of the foregoing discussing regarding Casun's other claims, defendant's argument necessarily fails. Although a claim for attorneys' fees cannot stand on its own, there are genuine issues of material fact pertaining to the merits of Casun's breach of fiduciary duty, aiding and abetting, civil conspiracy, and constructive trust claims. Thus, Casun may be entitled to attorneys' fees if it prevails on one ore more of its other claims. Defendants' motion is denied as to Casun's claim for attorneys' fees.

**IV.    Conclusion**

The court dismisses Casun's alter ego claim and Gunn's third-party complaint. The court denies the pending motions as to all other claims.

. . .

James C. Mahan
U.S. District Judge

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for partial summary judgment (ECF No. 199) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Casun's motion for partial summary judgment (ECF No. 198) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Wild's motion for summary judgment (ECF No. 197) be, and the same hereby is, GRANTED.

DATED January 6, 2020.

_____
UNITED STATES DISTRICT JUDGE