**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| CASUN INVEST, A.G., a Swiss corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL H. PONDER, an individual; LEZLIE GUNN, an individual; and NVWS PROPERTIES LLC, a Nevada limited liability company,<br><br>Defendants. | Case No. 2:16-cv-02925-JCM-GWF<br><br>**FINDINGS OF FACT and CONCLUSIONS OF LAW** |

These Findings of Fact and Conclusions of Law are based upon the stipulations of the parties, the evidence presented at the trial of this matter from May 9, 2022, through May 11, 2022, and the parties' post-trial briefings. Any and all findings of fact set forth herein shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law set forth herein constitute conclusions of law even if stated as findings of fact.

**FINDINGS OF FACT[1]**

The court hereby finds as follows:

1.      Plaintiff Casun Invest AG ("Casun") is incorporated in Switzerland, with its principal place of business in Switzerland.

2.      Defendant Michael H. Ponder ("Ponder") is a resident of Nevada.

3.      Defendant Lezlie Gunn ("Gunn") is a resident of Nevada.

4.      Defendant NVWS Properties LLC ("NVWS") is incorporated in Nevada with its principal place of business in Nevada.

---

[1] The court enters these findings of fact based on a preponderance of the evidence. In assessing the credibility of witnesses, the court has considered the source and basis of each witness's knowledge; the ability of each witness to observe; the strength of each witness's memory; each witness's interest, if any, in the outcome of the litigation; the relationship of each witness to either side in the case; and the extent to which each witness's testimony is either supported or contradicted by other evidence presented at the trial.

5. At all times relevant to this matter, Hans-Peter Wild was Casun's sole shareholder.

6. At all times relevant to this matter, Hans-Rudolf Wild was Casun's sole board member.

7. On November 16, 1992, a grant deed was recorded in the official records of the County of San Mateo, California, conveying title to the property commonly known as 140 Josselyn Lane, Woodside, California 94062 (APN 072-112-030) ("the property") from Calvin F. Gunn, an unmarried man, to Casun.

8. On December 2, 1992, Karen A. Kangas—a/k/a Karen A. Gunn—executed a quitclaim deed, quit claiming any interest she held in the property to Casun. That quitclaim deed was recorded in the official records of the county of San Mateo, California on December 7, 1992.

9. Approximately ten years after Casun purchased the Woodside Property, Calvin Gunn initiated litigation against Casun and Dr. Wild, claiming a life estate and an option to repurchase the Woodside Property based on an alleged oral agreement.

10. On August 28, 2002, Ponder was appointed as a *direktor*—someone selected and authorized by the board of directors to act on behalf of the corporation—for Casun to serve as its corporate representative in that lawsuit.

11. Ultimately, Casun and Dr. Wild prevailed in the Calvin Gunn Litigation because Calvin Gunn was unable to produce a writing documenting the interests he claimed in the Woodside Property.

12. Ponder was removed as Casun's *direktor* on March 21, 2013, and reappointed on March 28, 2013, effective on April 9, 2013.

13. As *direktor*, Ponder had the authority to execute documents, including grant deeds, on Casun's behalf.

14. In late March of 2013, Gunn and Hans-Peter Wild agreed that Casun would transfer the property to Gunn at a purchase price of at least $2,050,000.

15. Between March 26, 2013, and March 28, 2013, Gunn organized three Nevada limited liability companies: 1) Woodside Gate LLC, managed by Gunn and Ponder; 2) NVMS Properties LLC ("NVMS"), managed by Gunn; and 3) NVWS, managed by NVMS.

16.     On March 31, 2013, Hans-Peter Wild agreed to give Gunn $2,100,000 so that Gunn could purchase the property from Casun for $2,050,000.

17.     On March 31, 2013, Hans-Peter Wild sent an email to Hans-Rudolf Wild, Casun's sole board member, copied to Ponder, stating:

> Dear All,
> We have an offer for the house at market price and I think we should sell.
> Mike you have the details and please execute the sale with [Hans-Rudolf] Wild. The house is sold as is and we only need to transfer the title.
> Best regards

18.     Because he had been released as a *direktor* of Casun ten days earlier, Ponder did not have the ability to transfer the property on March 31, 2013.

19.     In early April, Gunn and Ponder prepared a series of emails to be sent to Jan-Michael Clauss ("Clauss"), Casun's legal counsel, regarding Ponder's removal as a *direktor* of Casun.

20.     At the same time, Gunn and Ponder prepared a series of emails to be sent to Hans-Rudolf Wild.

21.     On April 3, 2013, Ponder sent an email to Hans-Rudolf Wild, stating: "Please transfer the property from Casun to NVWS Properties, LLC as directed by Dr. Hans Peter Wild's message of March 31, 2013."

22.     On April 5, 2013, Ponder sent an email, as revised by Gunn, to Hans-Rudolf Wild, requesting that Hans-Rudolf Wild acknowledge and confirm receipt of Ponder's email of April 3, 2013.

23.     Hans-Rudolf Wild responded to Ponder's email minutes later, stating:

> I have received Dr. Hans Peter Wild's email a couple of days ago but I did neither receive your message of 3rd March 2013 nor any further documents.
> I accept that the matter has high priority.  However I have no idea how to prepare transfer documents for real estate in the US and to be honest I have not received any documents for execution from anyone.  If this documents [sic] are provided I will carry out what ever [sic] is necessary immediately.

24.     Thereafter, Ponder sent an email to Hans-Rudolf-Wild stating: "I will have all documents prepared and email them to you, along with the documents that I sent on April 3rd."

        a.   Ponder failed to fulfill this pledge.

3 of 12

25.     On April 8, 2013, Hans-Peter Wild wired Gunn $2,100,000.

26.     On April 11, 2013, Clauss sent Ponder an email attaching a copy of the Commercial Register for the Canton of Zug reflecting Ponder's re-appointment as a *direktor* of Casun.  The text of Clauss' email read: "you are back in the game."

27.     On April 11, 2013, Ponder requested certain documents regarding the property from Sibylle Fassbind ("Fassbind").

28.     On April 11 and 12, 2013, Fassbind sent emails to Ponder with copies of the title documents Ponder had requested related to Casun's ownership of the Woodside Property.

29.     On April 12, 2013, Ponder forwarded to Gunn the email from Fassbind that included the grant deed from Calvin Gunn to Casun.

30.     Defendants claim that on April 12, 2013, Gunn and Ponder executed a purchase agreement [Ex. 104] – Gunn on behalf of NVWS and Ponder on behalf of Casun – documenting Casun's agreement to sell the property to NVWS for $1,500,000 in cash equivalent.

31.     Defendants claim that three days later, on April 15, 2013, Gunn and Ponder executed a receipt [Ex. 105] – Gunn on behalf of NVWS and Ponder on behalf of Casun – documenting the delivery of jewelry to Hans-Peter Wild to satisfy the $1,500,000 purchase price identified in the purchase agreement.

32.     The purchase agreement [Ex. 104] and receipt [Ex. 105] are not credible evidence of a written contract to transfer the property for consideration.

        a.   The documents were created after the purported dates of signing and the parties' communications after those dates show that payment had not been received as represented by the documents.

        b.   However, Casun did not prove by a preponderance of the evidence that Ponder and Gunn fabricated those documents to defraud Casun or the court.

33.     On April 16, 2013, Hans-Peter Wild sent an email to Ponder identifying $2,050,000 as the purchase price but stating that he still did not have any details regarding the purchaser or the account number.

34.     On April 17, 2013, Ponder executed a grant deed on behalf of Casun and in favor of NVWS to convey the property.

35.     The evidence establishes that the parties—or their representatives or stakeholders: Ponder, Gunn, Hans-Rudolf Wild, and Hans-Peter Wild—all resided in Switzerland when the transfer was effected.

36.     Despite the representation in Ponder's email to Hans-Rudolf Wild on April 5, 2013, that Ponder would "have all documents prepared and email them to [Hans-Rudolf Wild], along with the documents that [Ponder] sent on April 3rd", Ponder did not provide the NVWS grant deed to Hans-Rudolf Wild for review and approval before executing the document on behalf of Casun.

37.     On April 25, 2013, the grant deed was recorded in the official records of the County of San Mateo, California, as instrument no. 2013-062730.

38.     On July 17, 2013, Hans-Peter Wild sent an email to Gunn and Ponder, stating that the payment for the property was overdue by weeks and demanding that the money be transferred within 24 hours.

39.     On August 3, 2013, Hans-Peter Wild sent Ponder and Gunn another email indicating that he had not received the name and contact data of the buyer for the property and had still not received payment.

40.     Ponder responded to that email stating "[t]he name of the purchaser is NVWS Properties LLC."

41.     On August 6, 2013, Hans-Peter Wild sent an email to Ponder, copied to Gunn, that provided the bank account number and the wiring instructions for Casun's bank account.  The email concluded by stating: "[p]lease see to it that the money is wired without any further delay."

42.     Casun conferred a benefit on NVWS by transferring title for the property to it.

43.     NVWS appreciated that benefit by holding title for and managing the property.

44.     It would be inequitable for NVWS to retain that benefit without paying the anticipated purchase price of $2,050,000.

45.     There is no evidence that NVWS provided payment to Casun for the property.

46. Casun was, or should have been, aware of its loss or damages and the identity of the person liable by, at the latest, August 3, 2013.

    a. Casun, through its sole shareholder Hans-Peter Wild, became aware of the transfer and the non-payment on July 17, 2013, when Hans-Peter Wild protested through email that payment had not yet been received for the transfer.

    b. Casun, through its sole shareholder Hans-Peter Wild, learned the identity of the purchaser on August 3, 2013, when Ponder informed Hans-Peter Wild through email that NVWS was the purchaser.

47. Casun reasonably should have learned that its causes of action arose by, at the latest, August 6, 2013.

    a. Casun, through its sole shareholder Hans-Peter Wild, knew or reasonably should have known that payment had not been received by, at the latest, August 6, 2013, the date of his last communication regarding the payment status.

    b. Casun, through its sole board member Hans-Rudolf Wild, reasonably should have learned about the transfer and failure to collect payment by that same date.

48. Casun brought this action on the date it filed its complaint, December 16, 2016.

## CONCLUSIONS OF LAW

The court hereby concludes as follows:

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because a complete diversity of citizenship exists between Casun and defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2. Nevada's conflict of law principles dictate which jurisdiction's law applies to each claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), superseded by statute on other grounds.

3. "[T]he Nevada Supreme Court has endorsed looking to the Second Restatement of Conflict of Laws and applying the most specific, applicable section to questions of tort and contract law." *McNamara v. Hallinan*, No. 2:17-cv-02967, 2019 WL 4752265, at *5 (D. Nev. Sept. 30, 2019) (citing *Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cty. of Clark*,

134 P.3d 111, 116 (Nev. 2006) ("[T]he Second Restatement's most significant relationship test governs choice-of-law issues in tort actions unless another, more specific section of the Second Restatement applies to the particular tort.")).

    4.     The following sections of the Second Restatement apply to each claim:

        a.  For breach of fiduciary duty, Restatement (Second) Conflicts of Law § 309.

            i.  Under § 309 and the internal affairs doctrine, the place of incorporation applies: Switzerland.

        b.  For aiding and abetting breach of fiduciary duty and civil conspiracy, Restatement (Second) Conflicts of Law § 145.

            i.  The place where the injury occurred: Switzerland (a Swiss corporation was harmed when Ponder executed the NVWS Grant Deed in Switzerland);

            ii.  The place where the conduct causing the injury occurred: Switzerland (Ponder executed the NVWS Grant Deed in Switzerland);

            iii. The domicile of the parties: Switzerland and Nevada; and

            iv. The place where the relationship between the parties, if any, is centered: Switzerland.

        c.  For constructive fraud, Restatement (Second) Conflicts of Law § 148(2).

            i.  The place where the plaintiff acted in reliance upon the representations: Switzerland (the money was wired from Switzerland);

            ii.  The place where the plaintiff received the representations: Switzerland (the NVWS Grant Deed was executed there and was effective upon execution);

            iii. The place where the defendant(s) made the representations: Switzerland;

            iv. The domicile of the parties: Switzerland and Nevada; and

            v.  The place where the tangible thing which is the subject of the transaction is located: California.

       d.  For unjust enrichment, Restatement (Second) Conflicts of Law § 221.

          i.  The place where the relationship between the parties, if any, is centered: Switzerland;

          ii.  The place where the benefit was received: Nevada;

          iii.  The place where the act conferring the benefit or enrichment was performed: Switzerland (origin of money provided and place where the NVWS Grant Deed was executed);

          iv.  The domicile of the parties: Switzerland and Nevada; and

          v.  The location of any land or chattel connected to the enrichment: California.

5.    "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *See* Restatement (Second) Conflicts of Law §§ 145, 148, 221.

6.    Considering the relevant contacts, Swiss law applies to those claims which arose in Switzerland—breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, and civil conspiracy—and Nevada law applies to the claim which arose in Nevada—unjust enrichment.

7.    Nevada's borrowing statute, Nevada Revised Statute 11.020, provides that:

> When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against the person in this State, except in favor of a citizen thereof who has held the cause of action from the time it accrued.

8.    By the date Casun filed this action, December 16, 2016, the statutes of limitations had not run on any of Casun's claims under Swiss law.

       a.  The court has taken judicial notice that the statutes of limitations in Switzerland in April 2013 for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, and civil conspiracy were one year from the date the plaintiff learned of the loss and the identity of the person liable. Swiss Code: 220 Code of Obligations; Art. 60.

b. The court has taken judicial notice that, under Swiss law, if the action is derived from an offence for which criminal law envisages a longer limitation period, that longer period also applies to the civil law claim.  Federal Act of 30 March 1911 on the Amendment of the Swiss Code: 220 Code of Obligations Art. 60.

c. The court has taken judicial notice that, under Swiss law, Casun's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, and civil conspiracy may also be pursued as criminal charges for fraud and/or criminal mismanagement, punishable by a custodial sentence of up to three years.  Swiss Code: 311 Code of Obligations Art. 158.

d. Under Swiss law, claims for criminal mismanagement punishable by a custodial sentence of three years carry a 10-year statute of limitation.  Swiss Code: 311 Code of Obligations Art. 97.

e. Accordingly, Casun had until August 6, 2023, to bring these claims.  Therefore, the claims are not barred by the applicable Swiss statutes of limitations.

9. As Swiss law does not bar Casun's claims, the court applies Nevada's statutes of limitations.  *See* Restatement (Second) Conflicts of Law § 142.

10. No equitable tolling applies to the statutes of limitations for Casun's claims.

11. Under Nevada law, Casun's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and constructive fraud fall under three-year statutes of limitations.  *See* NEV. REV. STAT. § 11.190(3).

12. The relevant statutes of limitations begin to run when the damaged party knew or reasonably should have known about the facts giving rise to its claims.

a. As discussed above, Casun reasonably should have known about the facts giving rise to its claims by, at the latest, August 6, 2013.

b. Accordingly, Casun had until August 3, 2016, to bring these claims.  Therefore, the claims are barred by the applicable Nevada statutes of limitations.

13. Under Nevada law, Casun's claims for civil conspiracy and unjust enrichment fall under four-year statutes of limitations. *See Siragusa v. Brown*, 114 Nev. 1384, 971 P.2d 801 (Nev.

1998); *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011); Nev. Rev. Stats. §§ 11.190(2), 11.220.

        a.   Accordingly, Casun had until August 3, 2017, to bring these claims.  Therefore, the claims are not barred by the applicable Nevada statutes of limitations.

    14.   In Nevada, a civil conspiracy is established by demonstrating: "(1) the commission of an underlying tort; and (2) an agreement between [d]efendants to commit that tort." *Sharda v. Sunrise Hosp. & Med. Ctr.*, No. 2:16-cv-2233-JCM-GWF, 2017 WL 2870086, at *10 (D. Nev. July 3, 2017).

    15.   Casun did not prove by a preponderance of the evidence that there was an agreement between the defendants to commit any tort.

    16.   In Nevada, a claim for unjust enrichment is established when: (a) the plaintiff confers a benefit on the defendant; (b) the defendant appreciates such benefit; and (c) "there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (internal quotations omitted).

    17.   Casun proved by a preponderance of the evidence that NVWS is liable for unjust enrichment.

        a.   Casun conferred a benefit—title for the property—to NVWS, NVWS appreciated that benefit by holding the title for and managing the property, and it would be inequitable for NVWS to retain that benefit without payment of the anticipated purchase price of $2,050,000.

    18.   Casun did not prove by a preponderance of the evidence that Gunn is liable for unjust enrichment.

        a.   The property was transferred to NVWS, not Gunn.

        b.   There is no evidence that NVWS is Gunn's alter ego. *See LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846–47 (Nev. 2000); (ECF No. 230 (dismissing Casun's alter ego claim)).

c.  There is no evidence of an enforceable contract obligating Gunn to personally complete the transfer with the $2,100,000 that Hans-Peter Wild gave her in 2013.  *See* NEV. REV. STATS. §§ 111.210, 111.220(5).

19.  The court finds in favor of the defendants and against Casun on Casun's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, and civil conspiracy.

20.  The court finds in favor of Casun and against NVWS on Casun's claim for unjust enrichment.

21.  The court finds in favor of Gunn and against Casun on Casun's claim for unjust enrichment.

22.  Casun is entitled to a judgment in its favor on its unjust enrichment claim for compensatory damages in the amount of the reasonable purchase price.

23.  The reasonable purchase price is the anticipated purchase price of $2,050,000.

24.  Defendants are entitled to a judgment in their favor and against Casun on Casun's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, and civil conspiracy.

25.  Casun's first and second claims for constructive trust and equitable lien are not claims for relief, but equitable remedies for its other claims.

26.  As monetary damages are sufficient to cure Casun's loss for its unjust enrichment claim, equitable relief in the form of a constructive trust or equitable lien is not warranted.

27.  Each party is to bear its own costs and fees.

## **ORDER**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that, consistent with these findings and conclusions:

1.  Judgment shall be entered in favor of Casun and against NVWS for unjust enrichment in the amount of $2,050,000 in compensatory damages;

2.  Judgment shall be entered in favor of Gunn and against Casun for unjust enrichment;

3.  Judgment shall be entered in favor of Ponder and against Casun for breach of fiduciary duty;

4.  Judgment shall be entered in favor of NVWS and Gunn and against Casun for aiding and abetting breach of fiduciary duty;

5.  Judgment shall be entered in favor of Ponder and against Casun for constructive fraud; and

6.  Judgment shall be entered in favor of Ponder, NVWS, and Gunn and against Casun for civil conspiracy.

IT IS FURTHER ORDERED that Casun shall prepare and file a proposed judgement consistent with this order and the forgoing findings and conclusions.

DATED this <u>15th</u> day of July, 2022.

_____
UNITED STATES DISTRICT JUDGE